# EXHIBIT A

THE SECURITIES REPRESENTED HEREBY HAVE NOT BEEN REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT"). THESE SECURITIES MAY BE OFFERED, SOLD, PLEDGED OR OTHERWISE TRANSFERRED ONLY (A) TO THE COMPANY, (B) OUTSIDE THE UNITED STATES IN COMPLIANCE WITH RULE 904 OF REGULATION S UNDER THE SECURITIES ACT, (C) IN COMPLIANCE WITH RULE 144 OR 144A THEREUNDER, IF AVAILABLE, AND IN ACCORDANCE WITH APPLICABLE STATE SECURITIES LAWS, (D) PURSUANT TO AN EFFECTIVE REGISTRATION STATEMENT, OR (E) IN A TRANSACTION THAT DOES NOT REQUIRE REGISTRATION UNDER THE SECURITIES ACT OR ANY APPLICABLE STATE SECURITIES LAWS, AND THE HOLDER HAS, PRIOR TO SUCH SALE, FURNISHED TO THE COMPANY AN OPINION OF COUNSEL OR OTHER EVIDENCE OF EXEMPTION, IN EITHER CASE REASONABLY SATISFACTORY TO THE COMPANY. HEDGING TRANSACTIONS INVOLVING THESE SECURITIES MAY NOT BE CONDUCTED UNLESS IN COMPLIANCE WITH THE U.S. SECURITIES ACT.

**10% SERIES A SECURED CONVERTIBLE DEBENTURE**

# SMITH ELECTRIC VEHICLES US CORP.

**Due May 28, 2014**

Original Issue Date:   May 28, 2009                                                              US$1,100,000.00

This Secured Convertible Debenture is one of a series of duly authorized and issued secured convertible debentures of Smith Electric Vehicles US Corp., a Delaware corporation (the "Company"), designated its 10% Series A Secured Convertible Debentures due May 28, 2014 (the "Debenture") and is issued to Equiom Trust Company Limited, as trustees of The Lausar Settlement, (together with its permitted successors and assigns, the "Holder") in accordance with exemptions from registration under the Securities Act of 1933, as amended (the "Securities Act"), pursuant to a Subscription Agreement, dated May 27, 2009, (the "Subscription Agreement") between the Company and the Holder. This Debenture comprises part of a Company unit (the "Units"). Each full Unit consists of a Debenture in the principal amount of $100,000 and 6,666 shares of the Company's common stock. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Subscription Agreement.

**Article I.**

Section 1.01 Principal and Interest. For value received, the Company hereby promises to pay to the order of the Holder, in lawful money of the United States of America and in immediately available funds the principal sum of one million one hundred thousand dollars ($1,100,000.00) on the earliest of (i) May 28, 2014 (the "Maturity Date"), or (ii) an Event of Default (as defined in Section 3.01). The Company may also prepay this Debenture, in whole or in part, at any time.

(a)   Except as otherwise provided for herein, this Debenture shall bear interest from the date hereof at the rate of ten percent (10%) per annum until paid in full, payable on the Maturity Date. Interest will be payable in shares of the Company's common stock valued in the same manner

1

Date. Interest will be payable in shares of the Company's common stock valued in the same manner as the principal amount of this Debenture and accrued interest due thereon are valued upon conversion under Section 1.02(a) hereof.

(b) On the Maturity Date, the entire unpaid principal amount and accrued but unpaid interest shall be paid to the Holder, unless this Debenture is prepaid in accordance with Section 1.03, converted in accordance with Section 1.02 herein, or the Maturity Date is accelerated in accordance with Section 3.02 herein by reason of an Event of Default.

Section 1.02 (a) Conversion at Option of Holder. At the option of the Holder, up to 50% of the outstanding principal amount of this Debenture and all accrued interest payable thereon shall be convertible into shares of the Company's common stock (the "Conversion Shares") in accordance with this Section 1.02(a). It is the present intention of the Company to become a public entity in the future through either (i) the filing of a registration statements on Form S-1 (the "Registration Statement") or such other form as shall be available (the "Registration Statement Filing" or the "IPO"); or (ii) the entry into a reverse acquisition in which the Company will be acquired by a public company (the "Public Company") and the Company's shareholders will receive stock in the Public Company in the business combination transaction (the "Reorganization"). In an IPO transaction, the Series A Debentures will be convertible at 80% of the price at which shares of our common stock are being valued in the IPO registration statement. In a Reorganization transaction, the Series A Debentures will be convertible at the price at which shares of our common stock are sold in a private placement that will close in connection with the closing of the Reorganization. In the event of a Registration Statement Filing, the Company shall, to the extent practicable, register the then maximum number of shares of Company common stock issuable upon conversion of this Debenture in the Registration Statement. In the event of a Reorganization, the related transaction documents shall provide that the shares otherwise issuable upon conversion of this Debenture will be convertible into shares of the Public Company on the same terms that shares of the Company are exchanged for shares of the Public Company at the closing of the Reorganization. To convert this Debenture pursuant to this Section 1.02(a), the Holder hereof shall deliver this Debenture, together with written notice of conversion, substantially in the form of Exhibit A to this Debenture, with appropriate insertions (the "Conversion Notice"), to the Company at its address as set forth herein. The Company shall thereafter issue to the Holder the Conversion Shares and a replacement debenture for the remaining principal balance. The date upon which the conversion shall be effective (the "Conversion Date") shall be deemed to be the date set forth in the Conversion Notice.

(b) Conversion at Option of Company. In connection with our becoming a Public Company through an IPO or Reorganization, the Series A Debentures are convertible at the option of the Company as to 50% of the principal amount of the Series A Debentures and all accrued interest due thereon in the same manner as provided in Section 1.02 above. To convert this Debenture pursuant to this Section 1.02(b), the Company shall deliver written notice thereof to the Holder. The Conversion Date shall be the date set forth in the notice. Within five (5) business days of receipt of such notice, Holder shall deliver this Debenture to the Company. The Company shall thereafter issue to the Holder the Conversion Shares and a replacement debenture for the remaining principal balance.

(c) Related Conversion Matters. No fraction of shares or scrip representing fractions of shares will be issued on conversion, but the number of Conversion Shares issuable shall be rounded to the nearest whole share. Any conversion of any portion of the Debenture to Conversion

Shares shall be deemed to be a prepayment of principal, without any penalty, and shall be credited against any future payments of principal in the order that such payments become due and payable.

Section 1.03 Prepayments. The Company may prepay principal and interest due on this Debenture at any time. Prepayment shall be applied to the reduction of principal prior to any applications to reduce accrued interest. If during the term of the Debentures, we complete an equity financing resulting in net proceeds to us of $25,000,000 or more, it is our intention to dedicate 20% of such net proceeds to the prepayment of principal then due on the Debentures. Prepayment under such circumstances is not mandatory on our part and will be made at our sole discretion. By way of example, if we receive net proceeds of $25,000,000 we intend to utilize $5,000,000 towards the prepayment of principal, and if we receive $40,000,000 we intend to utilize $8,000,000 towards the prepayment of principal. In such event, each holder of Debentures will receive a prepayment in proportion to the amount of their Debenture.

Section 1.04 Reservation of Common Stock. To the extent practicable, the Company shall reserve and keep available out of its authorized but unissued shares of Common Stock, solely for the purpose of conversion of this Debenture, that number of shares of Common Stock equal to the sum of the number of shares of Common Stock into which this Debenture is convertible based upon the conversion price.

Section 1.05 Absolute Obligation/Ranking. Except as expressly provided herein, no provision of this Debenture shall alter or impair the obligation of the Company, which is absolute and unconditional, to pay the principal of, and liquidated damages (if any) on, this Debenture at the time, place, and rate, and in the coin or currency, herein prescribed. This Debenture is a direct debt obligation of the Company.

Section 1.06 Liquidation Preference, Security Interest, Senior Debt. This Debenture has a liquidation preference over the Company's common stock and is being secured by all of the assets of the Company. The Company may however issue additional debt in the future which is senior to or pari passu with this Debenture. Any such senior debt will have a liquidation preference over this Debenture. Further, in the event of the issuance of senior debt, this Debenture will only be secured by our assets to the extent such assets are not secured by the senior debt.

Section 1.07 Paying Agent and Registrar. Initially, the Company will act as paying agent and registrar. The Company may change any paying agent, registrar, or Company-registrar by giving the Holder not less than ten (10) business days' written notice of its election to do so, specifying the name, address, telephone number and facsimile number of the paying agent or registrar. The Company may act in any such capacity.

Section 1.08 Different Denominations. This Debenture is exchangeable for an equal aggregate principal amount of Debentures of different authorized denominations, as requested by the Holder surrendering the same. No service charge will be made for such registration of transfer or exchange.

Section 1.09 Investment Representations. This Debenture has been issued subject to certain investment representations of the original Holder set forth in the Subscription Agreement and may be transferred or exchanged only in compliance with the Subscription Agreement and applicable federal and state securities laws and regulations.

Section 1.10 Reliance on Debenture Register. Prior to due presentment to the Company for

transfer or conversion of this Debenture, the Company and any agent of the Company may treat the person in whose name this Debenture is duly registered on the Debenture Register as the owner hereof for the purpose of receiving payment as herein provided and for all other purposes, whether or not this Debenture is overdue, and neither the Company nor any such agent shall be affected by notice to the contrary.

Section 1.11 In addition to the rights and remedies given it by this Debenture, the Holder shall have all those rights and remedies allowed by applicable laws. The rights and remedies of the Holder are cumulative and recourse to one or more right or remedy shall not constitute a waiver of the others.

## Article II.

Section 2.01 Amendments and Waiver of Default. The Debenture may not be amended without the consent of the Holder. Notwithstanding the above, without the consent of the Holder, the Debenture may be amended to cure any ambiguity, defect or inconsistency or to make any change that does not adversely affect the rights of the Holder.

## Article III.

Section 3.01 Events of Default. Each of the following events shall constitute a default under this Debenture (each an "Event of Default"):

    (a) failure by the Company to pay principal or interest due hereunder within five (5) business days of the date such payment is due;

    (b) failure by the Company or its transfer agent, as the case may be, to issue common stock to the Holder within five (5) business days of the Company's receipt of this Debenture and the attached Conversion Notice from Holder;

    (c) failure by the Company or its transfer agent, as the case may be, to issue common stock to the Holder within five (5) business days of the Holder's receipt of a notice of conversion from the Company and the Company's subsequent receipt of this Debenture from the Holder;

    (d) failure by the Company for five (5) business days after notice to it to comply with any of its other agreements in the Debenture;

    (e) the Company shall: (1) make a general assignment for the benefit of its creditors; (2) apply for or consent to the appointment of a receiver, trustee, assignee, custodian, sequestrator, liquidator or similar official for itself or any of its assets and properties; (3) commence a voluntary case for relief as a debtor under the United States Bankruptcy Code; (4) file with or otherwise submit to any governmental authority any petition, answer or other document seeking: (A) reorganization, (B) an arrangement with creditors or (C) to take advantage of any other present or future applicable law respecting bankruptcy, reorganization, insolvency, readjustment of debts, relief of debtors, dissolution or liquidation; (5) file or otherwise submit any answer or other document admitting or failing to contest the material allegations of a petition or other document filed or otherwise submitted against it in any proceeding under any such applicable law, or (6) be adjudicated a bankrupt or insolvent by a court of competent jurisdiction;

(f)   any case, proceeding or other action shall be commenced against the Company for the purpose of effecting, or an order, judgment or decree shall be entered by any court of competent jurisdiction approving (in whole or in part) anything specified in Section 3.01(d) hereof, or any receiver, trustee, assignee, custodian, sequestrator, liquidator or other official shall be appointed with respect to the Company, or shall be appointed to take or shall otherwise acquire possession or control of all or a substantial part of the assets and properties of the Company, and any of the foregoing shall continue unstayed and in effect for any period of sixty (60) days;

(g)   any event of default of the Company under any agreement, debenture, mortgage, security agreement or other instrument evidencing or securing indebtedness that ranks junior in priority to, or pari passu with, the obligations under this Debenture and the Subscription Agreement;

(h)   any default, whether in whole or in part, shall occur in the due observance or performance of any obligations or other covenants, terms or provisions to be performed under this Debenture or the Subscription Agreement which is not cured by the Company within five (5) business days after receipt of written notice thereof.

Section 3.02 If any Event of Default occurs, the full principal amount of this Debenture, together with any other amounts owing in respect thereof, to the date of acceleration shall become, at the Holder's election, immediately due and payable in cash. Commencing five (5) business days after the occurrence of any Event of Default that results in the eventual acceleration of this Debenture, interest on this Debenture shall begin to accrue at the rate of 10% per annum, or such lower maximum amount of interest permitted to be charged under applicable law. All Debentures for which the full amount hereunder shall have been paid in accordance herewith shall promptly be surrendered to or as directed by the Company. The Holder need not provide and the Company hereby waives any presentment, demand, protest or other notice of any kind, and the Holder may immediately and without expiration of any grace period enforce any and all of its rights and remedies hereunder and all other remedies available to it under applicable law. Such declaration may be rescinded and annulled by the Holder at any time prior to payment hereunder and the Holder shall have all rights as a Debenture holder until such time, if any, as the full payment under this Section shall have been received by it. No such rescission or annulment shall affect any subsequent Event of Default or impair any right consequent thereon.

### Article IV.

Section 4.01 Negative Covenants. So long as this Debenture shall remain in effect and until any outstanding principal and all fees and all other expenses or amounts payable under this Debenture and the Subscription Agreement have been paid in full, unless Holders of a majority of the principal amount of outstanding Debentures shall otherwise consent in writing, the Company shall not:

(a)   Dividends and Distributions. In the case of the Company, declare or pay, directly or indirectly, any dividend or make any other distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, with respect to any shares of its capital stock or directly or indirectly redeem, purchase, retire or otherwise acquire for value any shares of any class of its capital stock or set aside any amount for any such purpose.

(b)   Limitation on Certain Payments and Prepayments.

5

(i) Pay in cash any amount in respect of any indebtedness or preferred stock that may at the obligor's option be paid in kind or in other securities;

(ii) Optionally prepay, repurchase or redeem or otherwise defease or segregate funds with respect to any junior indebtedness of the Company.

## Article V.

Section 5.01 Re-issuance of Debenture. If the Holder elects to convert the Debenture in part, then the Company shall reissue a new Debenture in the same form as this Debenture to reflect the new principal amount and the Holder shall return the Debenture to the Company for cancellation

## Article VI.

Section 6.01   Notice. Notices regarding this Debenture shall be sent to the parties at the following addresses, unless a party notifies the other parties, in writing, of a change of address:

| | |
|---|---|
| If to the Company, to: | Smith Electric Vehicles US Corp.<br>14616 Carter Road<br>Overland, KS 66221<br>Attention: Bryan Hansel<br>Telephone: 913.940.8353 |
| With a copy to: | Greenberg Traurig, LLP<br>200 Park Avenue<br>New York, New York 10166<br>Attention: Alan I. Annex, Esq.<br>Telephone: 212.801.9200<br>Facsimile: 212.801.6400 |
| If to the Holder: | At the address set forth in the Subscription Agreement |

Section 6.02 Governing Law. All questions concerning the construction, validity, enforcement and interpretation of this Debenture shall be governed by and construed and enforced in accordance with the internal laws of the State of New York, without regard to the principles of conflicts of law thereof. Each party agrees that all legal proceedings concerning the interpretations, enforcement and defense of the transactions contemplated by any of the Transaction Documents (whether brought against a party hereto or its respective affiliates, directors, officers, shareholders, employees or agents) shall be commenced in the state and federal courts sitting in the City of New York, Borough of Manhattan (the "New York Courts"). Each party hereto hereby irrevocably submits to the exclusive jurisdiction of the New York Courts for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein (including with respect to the enforcement of any of the Transaction Documents), and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, or such New York Courts are improper or inconvenient venue for such proceeding. Each party hereby irrevocably waives personal service of process and consents to process being served in any such suit, action or proceeding by mailing a copy thereof via registered or certified mail or overnight delivery (with evidence of delivery) to such party at the

address in effect for notices to it under this Debenture and agrees that such service shall constitute good and sufficient service of process and notice thereof. Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law. Each party hereto hereby irrevocably waives, to the fullest extent permitted by applicable law, any and all right to trial by jury in any legal proceeding arising out of or relating to this Debenture or the transactions contemplated hereby. If either party shall commence an action or proceeding to enforce any provisions of this Debenture, then the prevailing party in such action or proceeding shall be reimbursed by the other party for its attorney's fees and other costs and expenses incurred with the investigation, preparation and prosecution of such action or proceeding.

Section 6.03 Severability. The invalidity of any of the provisions of this Debenture shall not invalidate or otherwise affect any of the other provisions of this Debenture, which shall remain in full force and effect.

Section 6.04 Entire Agreement and Amendments. This Debenture, together with the Securities Purchase Agreement, represents the entire agreement between the parties hereto with respect to the subject matter hereof and there are no representations, warranties or commitments, except as set forth herein. This Debenture may be amended only by an instrument in writing executed by the parties hereto.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, with the intent to be legally bound hereby, the Company as executed this Debenture as of the date first written above.

**Smith Electric Vehicles US Corp.**

By: _____
Name: BRUCE SHALETT
Title: SECRETARY

[SIGNATURE PAGE TO SECURED CONVERTIBLE DEBENTURE]

## EXHIBIT A

## NOTICE OF CONVERSION

**(To be executed by the Holder in order to convert the Debenture)**

TO:

    The undersigned hereby irrevocably elects to convert $ _____ of the principal amount (the "Principal Amount") of the above Debenture and $ _____ of accrued interest due on the Principal Amount into Shares of Common Stock of Smith Electric Vehicles US Corp., according to the conditions stated therein, as of the Conversion Date written below.

| | |
|---|---|
| **Conversion Date:** | _____ |
| **Applicable Conversion Price:** | _____ |
| **Signature:** | _____ |
| **Name:** | _____ |
| **Address:** | _____ |
| **Amount to be converted:** | $ _____ |
| **Amount of Debenture unconverted:** | $ _____ |
| **Conversion Price per Conversion Share:** | $ _____ |
| **Number of shares of Common Stock to be issued including as payment of interest, if applicable:** | _____ |
| **Please issue the shares of Common Stock in the following name and to the following address:** | _____ |
| **Issue to the following account of the Holder:** | _____ |
| **Authorized Signature:** | _____ |
| **Name:** | _____ |
| **Title:** | _____ |
| **Phone Number:** | _____ |
| **Broker DTC Participant Code:** | _____ |
| **Account Number:** | _____ |

NY 239,855,724v1